UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **FORTIS CORPORATE INSURANCE**, as subrogee of Empire Resources, Inc., <br><br> Plaintiff, <br><br> -v- <br><br> **TOTAL QUALITY LOGISTICS, INC.**, <br><br> Defendant / Cross-Claimant, <br><br> -v- <br><br> **HILL'S TRUCKING, INC.**, <br><br> Defendant / Cross-Claim Defendant. | Case No. 07-03731 <br><br> (Judge Victor Marrero) <br><br><br><br> **CROSS-CLAIM** |

Defendant and Cross Claimant Total Quality Logistics, Inc. ("TQL"), for its Cross-Claim against Defendant and Cross-Claim Defendant Hill's Trucking, Inc. ("Hill's"), by and through counsel, states as follows:

## NATURE OF ACTION

1.     Plaintiff in this action, Fortis Corporate Insurance, filed this suit against TQL and Hill's as subrogee for Empire Resources, Inc.

2.     Plaintiff seeks recovery for damages allegedly suffered when a tractor-trailer owned and operated by Hill's was stolen.

## FACTUAL BACKGROUND

3.     TQL and Hill's entered into a Broker/Carrier Agreement on June 2, 2006. A true and accurate copy of the Broker/Carrier Agreement is attached hereto at Tab A.

4.      Under the terms of the Broker/Carrier Agreement, Hill's agreed, among other things, that at all times and at its own expense it would provide and maintain all requisite operating permits and authorities, in full compliance with all applicable federal, state, territorial, and local statutes and regulations.

5.      Hill's violated the Broker/Carrier Agreement by not maintaining proper insurance on the tractor and trailer involved in this litigation.

6.      As a direct and proximate result of Hill's failing to maintain adequate insurance, TQL has been damaged by being forced to defend against the Complaint filed by Fortis Corporate Insurance.

7.      Paragraph 15 of the Broker/Carrier Agreement requires Hill's to pay all reasonable expenses, attorneys' fees and costs, including court costs, that TQL incurs in litigation involving Hill's.

8.      On September 29, 2006, Hill's accepted TQL's Purchase Order No. 317467 under which it agreed to deliver certain goods subject to this action. A true and accurate copy of the Purchase Order is attached hereto at Tab B.

9.      Under Paragraph 2 of the Purchase Order, Hill's is responsible for any damage to product or damage to the product container, and shortages of freight.

10.     Under the Purchase Order, Hill's agreed to be responsible for any damage or loss to goods being transported.

11.     Under the Purchase Order, Hill's further agreed that it would be in compliance and remain in compliance with all transportation regulations according to federal, state, and local requirements. Hill's failed to stay in compliance by failing to maintain adequate insurance on the tractor-trailer in question.

## COUNT I — INDEMNIFICATION

12.     TQL incorporates all of the allegations in Paragraphs 1 through 11 above as if fully rewritten herein.

13.     As a result of Hill's obligations under the Broker/Carrier Agreement, the Purchase Order, and federal and state law, Hill's is required to indemnify and hold harmless TQL for any amounts it is required to pay in defense of this litigation and/or any amounts it may compensate the Plaintiff in the underlying action for the transaction underlying this litigation.

**WHEREFORE**, Defendant/Cross Claimant Total Quality Logistics, Inc., demands that Defendant/Cross-Claim Defendant Hill's Trucking, Inc. indemnify and hold TQL harmless for any settlement, verdict, or judgment it is required to pay in this litigation, and for its attorneys' fees and expenses in defending this litigation.

DATED: June 27, 2007                              Respectfully submitted,

 /s/ S. Henry Cho
S. Henry Cho (SC 3793)
Sung Y. Ahn (SA 3773)
PAK & CHO, P.C.
1222 Anderson Avenue
Fort Lee, New Jersey 07024
Phone: (201) 886-0200
Fax:   (201) 886-0111
ahn@pakcho.com
*Attorney for Defendant,*
*Total Quality Logistics, Inc.*

Charles M. Miller (*Pro hac vice* pending)
One East Fourth Street, Suite 1400
Cincinnati, Ohio 45202
Phone: (513) 579-6967
Fax: (513) 579-6457
cmiller@kmklaw.com
*Attorney for Defendant,*
*Total Quality Logistics, Inc.*

## CERTIFICATE OF SERVICE

     I hereby certify that on June 27, 2007, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notice of such filing to ECF participants.

                                          /s/ S. Henry Cho
                                          S. Henry Cho (SC 3793)

2063477.1

Case 1:07-cv-03731-VM    Document 11-2    Filed 06/27/2007    Page 1 of 2
From: unknown    Page: 4/5    Date: 6/2/2006 9:36:10 AM
FROM : Panasonic FAX SYSTEM    PHONE NO. :    Dec. 23 2004 09:14PM P4

From: TQL Fax Server (OL11)    To: 17317646707    Page: 5/12    Date: 6/2/2006 9:10:10 AM

OH CARRIER PACKET 4



**Mailing Address:**
P.O. Box 799, Milford, OH 45150-0799

**Overnight Address:**
1701 Edison Dr, Milford, OH 45150-2728

**Carrier Department Fax:** 513-248-5347

## BROKER/CARRIER AGREEMENT

THIS AGREEMENT ("Agreement"), made and intended to be effective this **2nd** day of **June**, 20**06**, by and between Total Quality Logistics, Inc., an Ohio corporation whose main office is located in Milford, Ohio, ("BROKER") and **Hill's Trucking Inc** whose main office is located at **Hwy 57E, Grand Jct, TN**, ("CARRIER"), collectively the "Parties."

### RECITALS

WHEREAS, BROKER is licensed by the Federal Motor Carrier Safety Administration in Docket No. MC-322572 B to engage in operations, in interstate or foreign commerce, as a broker, arranging for transportation of freight (except household goods), and as a broker arranges services for various consignors, consignees, motor/rail carriers and/or other third parties (hereinafter individually or collectively "CUSTOMER(S)");
WHEREAS, CARRIER holds motor carrier authority from the Federal Highway Administration in Certificate No. MC-_____ to engage in transportation as a common or contract carrier of property (except household goods, and class A and B explosives); and
WHEREAS, BROKER, to satisfy some of the freight transportation needs of its CUSTOMERS, desires to use the services of CARRIER on a non-exclusive basis.
NOW, THEREFORE, for good and valuable consideration, the parties agree as follows:

### AGREEMENT

1. **TERM.** The term of this Agreement shall be one (1) year, commencing on the date first mentioned above. This Agreement shall automatically renew itself for successive one year periods; provided, however, that either Party may terminate this Agreement on 30 days written notice to the other Party, with or without cause, or as otherwise provided in this Agreement.
2. **CARRIER'S COVENANTS.** In performing transportation services hereunder, CARRIER agrees that it shall, at all times and at its own expense, provide and maintain:
   (a) safe and adequate freight handling facilities;
   (b) sufficient, duly qualified, competent, skilled and properly trained and licensed drivers;
   (c) all other personnel, motor vehicles and transportation related equipment in good working order, as necessary to perform all required transportation services in a safe manner;
   (d) all requisite operating permits and authorities, in full compliance with all applicable federal, state, territorial and local statutes and regulations.
3. **BROKER'S COVENANTS.** BROKER warrants that it has authority to tender its CUSTOMERS' freight for transportation under this Agreement. Although this is a non-exclusive Agreement, and BROKER is free to offer freight for transportation to other carriers, BROKER agrees to offer CARRIER at least two (2) loads of freight during each year that this Agreement remains in effect.
4. **COMPENSATION.** CARRIER agrees to transport freight for BROKER, under the terms of its carrier authority, at mutually agreed rates of compensation. CARRIER shall submit invoices, bills of lading and signed loading or delivery receipts for all transportation services furnished under this Agreement to BROKER. BROKER and CARRIER shall use their best efforts to ensure the accuracy of all freight charge billings tendered by BROKER to CUSTOMERS for transportation services performed by CARRIER under this Agreement. BROKER shall have the right to audit, from time to time, any and all freight charge billings by CARRIER, and CARRIER shall cooperate fully with such audits. Except in case of *Force Majeure*, BROKER reserves the right to reduce compensation otherwise due CARRIER by the actual amount of additional cost incurred by BROKER when BROKER must arrange alternative services to replace services promised but not provided by CARRIER under this Agreement.
5. **DOT SAFETY RATING.** At all times during the term of this Agreement, CARRIER shall maintain a "Satisfactory" DOT safety rating. Any change in CARRIER's safety rating to below "Satisfactory" shall be grounds for BROKER to immediately terminate this Agreement on one day's notice to CARRIER.

*TOTAL QUALITY LOGISTICS IS AVAILABLE 24 HOURS, 7 DAYS A WEEK, 365 DAYS A YEAR*

Rev. 3/14/2006    WWW.TOTALQUALITYLOGISTICS.COM    6/2/2006

OH CARRIER PACKET - 6

otherwise due CARRIER, BROKER shall withhold payment to CARRIER and shall instead pay appropriate compensation to the carrier who actually transported the shipment. BROKER will interpret any acceptance of a shipment by CARRIER as a common or contract carrier and subsequent subcontracting of the shipment to any third party as an assignment of the right to be compensated for that shipment to the third party.

12. **WAIVER AND DISCHARGE.** The failure of either Party to enforce any provision of this Agreement shall in no way be construed as a waiver of such provision or the right of either Party to enforce such provision in the future or in any way to affect the validity of this Agreement or any part hereof.

13. **NOTICES.** All notices required or permitted under this Agreement shall be in writing, shall be signed by or on behalf of the Party giving the notice, and shall be sent to the other Party at its main office listed above via certified U.S. Mail, overnight courier, facsimile, or e-mail transmission.

14. **GOVERNING LAW.** This Agreement shall be governed by and construed in accordance with the laws of the State of Ohio applicable to contracts to be performed wholly in that state. CARRIER and BROKER further agree that the exclusive venue for any lawsuit necessary to resolve a dispute not resolved pursuant to paragraph 12 below shall be in state or federal court in Cincinnati, Hamilton County, Ohio.

15. **DISPUTE RESOLUTION.** If a dispute arises between the Parties under this Agreement, as a condition precedent to any other remedy, the Parties agree to:
    (a) Meet and confer with each other as soon as possible to reach a voluntary resolution of the dispute.
    (b) If such voluntary resolution does not succeed, the Parties agree to submit the dispute to non-binding mediation before a mutually agreed upon mediator.
    (c) For disputes whose amount in controversy is $10,000.00 or less, the mediator's decision shall be final and binding upon both Parties.
    Each Party shall bear its own costs and fees in connection with any above described dispute resolution effort. If the process described in this paragraph fails to resolve any dispute between the Parties, and litigation results, CARRIER agrees to pay all reasonable expenses, attorney fees and costs (including court costs) that BROKER incurs in any such litigation.

16. **ENTIRE AGREEMENT.** This Agreement constitutes the entire agreement between the Parties. This Agreement supersedes any and all prior discussions, negotiations and/or contracts (written or oral) and renders any such prior contracts null and void. It may be modified only by mutual agreement of both CARRIER and BROKER, in a writing signed by both Parties.

17. **INVALIDITY OF PROVISIONS.** If a court of competent jurisdiction declares any provision of this Agreement invalid, such decision shall not affect the validity of any remaining provisions, and all remaining provisions of this Agreement shall remain in full force and effect.

18. **ASSIGNMENT AND DELEGATION.** This Agreement shall inure to the benefit of and be binding upon the successors and assigns of both Parties, provided, however, that no assignment of rights and no delegation of duties under this Agreement shall be effective without the prior written consent of the other Party. Notwithstanding the above, either Party may, at any time, transfer this Agreement together with its rights and duties to any parent corporation or wholly owned subsidiary of its parent corporation, without permission of the other Party.

19. **FACTORING.** Carrier shall provide TQL written notice of any assignment, factoring, or other transfer of its right to receive payments arising under this Contract thirty (30) days prior to such assignment, factoring, or other transfer taking legal effect. Such written notice shall include the name and address of assignee/transferee, date, date assignment is to begin, and terms of the assignment, and shall be considered delivered upon receipt of such written notice by TQL. Carrier shall be allowed to have only one assignment, factoring or transfer legally effective at any point in time, and no multiple assignments, factoring or transfers by the Carrier shall be permitted. Carrier shall indemnify TQL against and hold TQL harmless from any and all lawsuits, claims, actions, damages (including reasonable attorneys fees, obligation, liabilities, and liens) arising or imposed in connection with the assignment or transfer of any account or right arising thereunder. If Carrier wants to stop factoring, a release letter from the Carrier has to be received by TQL specifying the date of release. Carrier also releases and waives any right, claim or action against TQL for amount due and owing under this Contract where Carrier has not complied with the notice requirements of this section.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the date first above written intending to be legally bound.

TOTAL QUALITY LOGISTICS, INC.   CARRIER: _Hills Trucking, Inc_

_James E Perkinson_ (signature)   By: _Vicki Hill_ (signature)

Typed Name: **Jim Perkinson**   Typed Name: _Vicki Hill_

Title: Controller   Title: _Dispatch_

*TOTAL QUALITY LOGISTICS IS AVAILABLE 24 HOURS, 7 DAYS A WEEK, 365 DAYS A YEAR*

Rev. 3/14/2006   *WWW.TOTALQUALITYLOGISTICS.COM*   6/2/2006

```
From: unknown            Page: 1/2   Date: 9/29/2006 10:48:18 AM
FROM : Panasonic FAX SYSTEM       PHONE NO. :                      Apr. 21 2005 10:28PM P1

From: TQL Fax Server (OL8)   To: 17317646707   Page: 1/2   Date: 9/29/2006 9:38:36 AM
```



# Rate Confirmation

P.O. BOX 799 MILFORD, OHIO 45150
PHONE 800-580-3101 OR 513-831-2600 FAX 513-248-5759
www.TotalQualityLogistics.com

**TOTAL QUALITY LOGISTICS**
*exceptional service · proven results*



317467CAR550

*Southern Worldwide Warehouse*
713-939-9880    P/U EWR 34519
                                         9/29/2006 9:36:05 AM

TQL PO #: 317467
Rep: Brandon Evans Ext: 2066
Pickup Up Date(s): 09/29
Carrier: Hill Trucking Inc (tn)
Rate (To The Truck): $550.00    ( FLAT $550.00 x 1 = $550.00 )

Trailer: Flat
Size: 48 ft or 53 ft    Temperature:
Delivery Date(s): 09/29
Driver: Kermit

*Deliver til 6pm.*

(Rates that are based upon weight or count will be calculated from the quantities loaded.)
Note To Carrier: **MUST BE WELL TARPED AND REMAIN DRY AT ALL TIMES**
Carrier Is Responsible For   None Unloading Charges
Comments:                                          *Richardson, TX   Trident Company   972-231-5176*
Carrier Is Not Responsible For Pallet Exchange

**Pick Ups**  City                    State           Date           Time
              HOUSTON                 TX              9/29/2006 08:00-17:00 FCFS

**Deliveries** City                   State           Date           Time
              RICHARDSON              TX              9/29/2006      8:00-17:00 FCFS

1. Drivers are required to check call every day (including Sat., Sun., and holidays), between 8:00am and 9:00am Eastern Time. Failure to do so can result in a $100.00 fine against carrier's settlement for each infraction.
2. Carrier is responsible for any damage to product or damage to the products container, and shortages of freight.
3. If any unloading payment is agreed upon, **carrier must supply unloading receipt** with lumpers full name and social security number at time of original billing, also, the driver must call TQL to get a release number for any lumper fees. Failure to do so within 24 hours of delivery will result in no-reimbursement for unloading.
4. TQL is available 24 hours a day 7 days a week. Failure to call immediately on any problems can result in a $200.00 fine.
5. To ensure prompt payment, we require the ORIGINAL signed shippers BOL's, along with TQL's P.O.# on the invoice.
6. Failure to return with fully loaded truck or incomplete order will result in a reduced pro-rated fee.
7. Any costs incurred by TQL due to your truck being late for pick-up or delivery appointments could be charged to carrier.
8. $25 will be deducted from your invoice for each comcheck issued. We offer a 7 day (from date of receipt) quickpay at a 3% deduction from the gross amount of your rate. 7 Day Quickpay must be specified on your invoice. Also, a 1 day (from date of receipt) comcheck payment in full is available for a 5% discount plus a $25 processing fee for each load. 1 Day Quickpay must be clearly specified on your invoice.
9. Failure to report any overage, shortage or damage within 24 hours will result in a $100 fine.
10. Any product that is to be disposed needs to have written consent from TQL before being disposed of.
11. Carrier agrees that broker is the sole party responsible for payment of carriers invoices and that, under no circumstance, will Carrier seek payment from the shipper or consignee.
12. Driver must have a minimum of 2 load locks to secure the load.
13. By executing this Rate Confirmation on behalf of Carrier, Driver hereby covenants and agrees that he/she has enough available hours of service to pick up and complete delivery of the tendered load within time frames dictated by BROKER and/or its CUSTOMER(S), without violating the FMCSA hours of service regulations contained at 49 C.F.R. § 395.
14. Carrier agrees that they are in compliance with safety regulations according to Federal, State and Local requirements.
15. Loads that are sealed at the shipping point are to remain sealed until an authorized person at the receiver breaks the seal. If the seal is broken by an unauthorized person, the carrier becomes 100% liable for the cost of the product and any other expenses.
16. TQL reserves the right to offset any claim(s) with pending invoices.
17. Carriers requesting fuel advances are subject to these terms: Com Checks will be issued after loading has been verified by shipping personnel. Carrier may be issued advances up to 40% of agreed upon rate, with a maximum of $1,400.

**REEFER LOADS**
1. Prior to loading, confirm that the reefer unit is working properly and pre-cool your trailer.
2. Driver is responsible to make sure space is provided for air circulation in front, rear, top, bottom, and between the load.
3. **Trailers hauling produce must have an air chute for proper circulation, no exceptions! It is your drivers responsibility to make sure the chute is not damaged, obstructed or blocked in any way.**

This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com

From: TQL Fax Server (OL8)   To: 17317646707   Page: 2/2   Date: 9/29/2006 9:38:37 AM

4. Check pulp temperature of the product to ensure that it has been pre-cooled. Do not accept any fresh product pulping over 2 degrees above the required temperature noted on our rate confirmation. If the temperature on our rate confirmation differs from that on the Bill of Lading, call our office before signing the bills at the shipper. Make sure the pulp temp. of the product loaded is marked on the original Bill of Lading and that your driver agrees with that temp.
5. When a driver signs the Bill of Lading, you are confirming that you received the correct product, correct count, at the proper temperature. Be sure they agree with the information on the Bill of Lading. Your company is responsible.
6. Maintain continuous temperature noted on our Rate Confirmation in-route, unless otherwise instructed by our office.

_____            _____
TQL REPRESENTATIVE SIGNATURE          CARRIER REPRESENTATIVE SIGNATURE
Brandon Evans

*IMMEDIATELY FAX A COPY OF THIS SIGNED CONFIRMATION TO 513-248-5759 -THANK YOU

TQL PO#: 317467